# In the
# United States Court of Appeals
## for the Sixth Circuit

NICHOLAS K. MERIWETHER,

*Plaintiff-Appellant,*

v.

FRANCESCA HARTOP, Trustee of Shawnee State University; JEFFREY A. BAUER, in his official capacity; ROBERTA MILLIKEN, in her official capacity; JENNIFER PAULEY, in her official capacity; TENA PIERCE, in her official capacity; DOUGLAS SHOEMAKER; MALONDA JOHNSON, in her official capacity; JOSEPH WATSON, Trustee of Shawnee State University; SCOTT WILLIAMS, Trustee of Shawnee State University; DAVID FURBEE, Trustee of Shawnee State University; SONDRA HASH, Trustee of Shawnee State University; ROBERT HOWARTH, Trustee of Shawnee State University; GEORGE WHITE, Trustee of Shawnee State University; WALLACE EDWARDS, Trustee of Shawnee State University,

*Defendants-Appellees,*

JANE DOE; SEXUALITY AND GENDER ACCEPTANCE,

*Intervenor-Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati, No. 1:18-cv-00753.
The Honorable **Susan J. Dlott**, Judge Presiding.

## *AMICUS CURIAE* BRIEF OF FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION IN SUPPORT OF NEITHER AFFIRMANCE NOR REVERSAL

WILL CREELEY
MARIEKE TUTHILL BECK-COON
GREG HAROLD GREUBEL
FOUNDATION FOR INDIVIDUAL RIGHTS
IN EDUCATION (FIRE)
510 Walnut St., Suite 1250
Philadelphia, PA 19106
(215) 717-3473

DEBORAH A. AUSBURN
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
(770) 434-6868

*Counsel for Amicus Curiae Foundation for Individual Rights in Education*

 

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 20-3289 _____          Case Name: Meriwether v. Hartop et al. _____

Name of counsel: Debbie A. Ausburn _____

Pursuant to 6th Cir. R. 26.1, Foundation for Individual Rights in Education _____
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

CERTIFICATE OF SERVICE

I certify that on _____ Debbie A. Ausburn _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Debbie A. Ausburn _____

_____

_____

*This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

INTEREST OF *AMICUS CURIAE* ..................................................................1

SUMMARY OF ARGUMENT .........................................................................2

ARGUMENT ...................................................................................................6

    I.    This Court Should Join its Sister Circuits and Limit the Scope of the *Garcetti* Exception in Higher Education....................................6

        a.    This Court has Recognized Academic Freedom as a Special Concern of the First Amendment...................................6

        b.    The Fourth, Fifth, and Ninth Circuits Have Held that *Garcetti* Does Not Apply to Scholarship or Teaching Due to Academic Freedom Concerns .........................................7

    II.    This Court Should Hold That Speech Related to Scholarship or Teaching is Categorically Citizen Speech ......................................11

        a.    This Court Limits the Scope of the *Garcetti* Exception After *Lane* ................................................................................11

        b.    This Court Should Follow *Boulton* and Hold that Speech Related to Scholarship or Teaching in Higher Education is "Citizen Speech"....................................................14

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adams v. Trs. of the Univ. of N. Carolina-Wilmington*,
  640 F.3d 550 (4th Cir. 2011) ........................................................ *passim*

*Boulton v. Swanson*,
  795 F.3d 526 (6th Cir. 2015) ....................................................... *passim*

*Buchanan v. Alexander*,
  919 F.3d 847 (5th Cir. 2019) ....................................................... *passim*

*Connick v. Myers*,
  461 U.S. 138 (1983) ................................................................... *passim*

*Dambrot v. Cent. Mich. Univ.*,
  55 F.3d 1177 (6th Cir. 1995) ............................................................ 7

*Demers v. Austin*,
  746 F.3d 402 (9th Cir. 2014) ............................................. 4, 9, 14, 16

*Dougherty v. Sch. Dist. of Phila.*,
  772 F.3d 979 (3d Cir. 2014) ........................................................... 13

*Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*,
  624 F.3d 332 (6th Cir. 2010) .................................................... 4, 16

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ................................................................. *passim*

*Gillis v. Miller*,
  845 F.3d 677 (6th Cir. 2017) ..................................................... 14, 15

*Hardy v. Jefferson Cmty. Coll.*,
  260 F.3d 671 (6th Cir. 2001) ..................................................... 3, 6-7

*Keyishian v. Bd. of Regents*,
  385 U.S. 589 (1967) ............................................................... 3, 9, 17

*Lane v. Franks*,
  573 U.S. 228 (2014) ................................................................. *passim*

*Mayhew v. Town of Smyrna*,
  856 F.3d 456 (6th Cir. 2017) ............................................ 2, 14, 15, 17

iii

*Pickering v. Board of Education*,
   391 U.S. 563 (1968) ................................................................. *passim*

*Regents of the Univ. of Mich. v. Ewing*,
   474 U.S. 214 (1985) ................................................................6

*Regents of Univ. of Cal. v. Bakke*,
   438 U.S. 265 (1978) ................................................................6

*Sweezy v. New Hampshire*,
   354 U.S. 234 (1957) ................................................................3

*United States v. Mandujano*,
   425 U.S. 564 (1976) ..............................................................11

**Statutes & Other Authorities:**

U.S. Const. Amend. I ................................................... *passim*

18 U.S.C. § 1623 ...................................................................11

42 U.S.C. § 1983 ............................................................... 9, 15

Circuit Rule 29(a)(3) ...............................................................1

Fed. R. App. P. 29(a)(4)(E) .....................................................1

Mich. Comp. Laws § 423.210(1)(b) .....................................16

# INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights in Education ("FIRE") is a nonpartisan, nonprofit organization dedicated to promoting and protecting civil liberties at our nation's institutions of higher education. Since 1999, FIRE has worked to protect student and faculty rights at campuses nationwide. FIRE believes that to best prepare students for success in our democracy, the law must remain unequivocally on the side of robust free speech and academic freedom rights on campus. FIRE coordinates and engages in targeted litigation and regularly files briefs as *amicus curiae* to ensure that student and faculty First Amendment and academic freedom rights are protected at public colleges and universities.

---

[1] This *amicus curiae* brief is submitted with an accompanying motion for leave under Circuit Rule 29(a)(3). Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, counsel for *amicus* FIRE states that no counsel for a party authored this brief in whole or in part and no person, other than *amicus*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

*Amicus* FIRE submits this Brief because this case is an opportunity for this Court to strengthen the First Amendment rights of its public college and university professors. The Supreme Court established modern public employment First Amendment analysis in *Pickering v. Board of Education*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983). Under the *Pickering/Connick* analysis, an employee's speech is protected if (1) the speech concerned a matter of public concern, and (2) the employee's "speech interest outweighs 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017) (internal citations omitted.) In *Garcetti v. Ceballos*, the Supreme Court added another step to this analysis by holding that employee speech is only protected if employees speak as citizens, not as employees pursuant to their job duties. 547 U.S. 410, 421 (2006). Based upon *Pickering, Connick,* and *Garcetti*, this Court now applies the following three-part test: "First, the employee must speak on 'matters of public concern.' Second, the employee must speak as a private citizen and not as an employee pursuant to his official duties. Third, the employee must show that his speech interest outweighs 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Mayhew*, 856 F.3d at 462 (internal citations omitted.)

As this Court has recognized, "[d]etermining whether speech is unprotected due to the *Garcetti* exception or because it is not on a matter of public concern has proven challenging." *Boulton v. Swanson*, 795 F.3d 526, 533 (6th Cir. 2015). This challenge is unsurprising considering that courts must apply *Garcetti* to almost all public employees in the United States—a group of approximately twenty million employees whose jobs range from desk clerk to microbiologist. Despite the difficulties with applying a single test across a broad range of jobs, the Supreme Court only recognized one job where *Garcetti*'s exception would raise additional First Amendment concerns—college and university professors. *Garcetti*, 547 U.S. at 425.

It is unsurprising that the Supreme Court recognized the unique position occupied by public college and university professors because it has stressed that academic freedom is "a special concern of the First Amendment" that requires judicial protection. *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967); *see also Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957). Citing to *Keyishian*, this Court has recognized that "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 680 (6th Cir. 2001) (quoting *Keyishian*, 385 U.S. at 603.)

Recognizing the concerns implicated by academic freedom, the Fourth, Fifth, and Ninth Circuits have held that the *Garcetti* exception does not apply to speech

related to scholarship or teaching in higher education. *Adams v. Trs. of the Univ. of N. Carolina-Wilmington*, 640 F.3d 550, 563 (4th Cir. 2011); *Demers v. Austin*, 746 F.3d 402, 411-12 (9th Cir. 2014); *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019). By removing the *Garcetti* exception, the Fourth, Fifth, and Ninth Circuits have simplified the analysis in those cases by returning to the two-part *Pickering/Connick* inquiry. *Id.*

Although this Court has recognized the importance of academic freedom in higher education, it has yet to hold that the *Garcetti* exception does not apply to speech related to scholarship or teaching in higher education. *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 343-44 (6th Cir. 2010). However, since the Supreme Court rejected an expansive reading of the *Garcetti* exception in *Lane v. Franks*, this Court has likewise limited the scope of the *Garcetti* exception. 573 U.S. 228, 239 (2014). Specifically, this Court recognized that "[a]fter *Lane*, the *Garcetti* exception to First Amendment protection for speech residing in the phrase 'owes its existence to a public employee's professional responsibilities' must be read narrowly," and categorically held that "speech in connection with union activities is speech 'as a citizen' for the purposes of the First Amendment." *Boulton*, 795 F.3d at 534. By holding that union speech is to be categorically considered citizen speech, this Court effectively removed the *Garcetti* exception from cases involving union speech—the same result that the Fourth, Fifth,

and Ninth Circuits have reached for cases involving speech related to scholarship or teaching in higher education.

As argued below, this Court should continue to recognize the special First Amendment value of academic freedom and follow the Fourth, Fifth, and Ninth Circuits by holding that the *Garcetti* exception does not apply to speech related to scholarship or teaching in higher education. In the alternative, this Court can achieve the same result by analyzing speech related to scholarship or teaching in higher education the same way it analyzed union speech in *Boulton* and hold that it is categorically citizen speech.

*Amicus* FIRE takes no position as to whether Plaintiff-Appellant's speech was related to scholarship or teaching and thus merits protection as an exercise of academic freedom. However, because academic freedom requires particular judicial attention and protection, this Court should be cognizant of the need for jurisprudential clarity and precision if it concludes that the present case involves academic freedom concerns.

**ARGUMENT**

I. **This Court Should Join its Sister Circuits and Limit the Scope of the *Garcetti* Exception in Higher Education.**

    a. **This Court has Recognized Academic Freedom as a Special Concern of the First Amendment.**

Academic freedom protects both the expressive rights of faculty members on matters related to scholarship and teaching and the right of colleges and universities to make academic decisions without undue interference from outside actors. Even though academic freedom is not a "specifically enumerated constitutional right," the Supreme Court has recognized "[o]ur national commitment to the safeguarding of these freedoms within university communities." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978). In its cases involving academic freedom concerns, a line of decisions spanning more than a half-century, the Court has repeatedly emphasized that academic freedom's importance necessitates particular judicial care. The judiciary must strike a careful balance between its "reluctance to trench on the prerogatives of state and local educational institutions and [its] responsibility to safeguard their academic freedom." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985).

This Court has likewise long recognized the importance of academic freedom. Nearly two decades ago, for example, this Court characterized academic freedom as "one of our most fundamental and established constitutional rights." *Hardy v.*

*Jefferson Cmty. Coll.*, 260 F.3d 671, 682 (6th Cir. 2001). While recognizing that "[t]he principle of academic freedom emphasizes the essentiality of free public expression of ideas," however, this Court has tied the protection of academic freedom to "the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives." *Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1189 (6th Cir. 1995). Recognizing the incompatibility of an academic's professional role with *Garcetti's* "official duties" rule, the Fourth, Fifth, and Ninth Circuits have held that the *Garcetti* exception does not apply to speech related to scholarship or teaching in higher education.

### b. The Fourth, Fifth, and Ninth Circuits Have Held that *Garcetti* Does Not Apply to Scholarship or Teaching Due to Academic Freedom Concerns.

In *Garcetti*, the Supreme Court examined whether a public employee's speech pursuant to his official job duties was protected by the First Amendment. 547 U.S. at 413. The plaintiff was a deputy district attorney who alleged that he was terminated for writing a memorandum pursuant to his duties concerning inaccuracies in an affidavit used to obtain a search warrant. *Id.* at 413-15. The Court held that the plaintiff's claim failed because he wrote the memorandum pursuant to his duties, explaining that "[t]he controlling factor in [the plaintiff's] case is that his expressions were made pursuant to his duties as a calendar deputy." *Id.* at 421. In reaching this conclusion, the Court held that "when public employees make statements pursuant

to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.*

In his now-famous dissent, Justice Souter warned that *Garcetti*'s holding could "imperil First Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write 'pursuant to . . . official duties.'" *Id.* at 438 (internal citation omitted). The *Garcetti* majority recognized the importance of academic freedom but chose not to "decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." *Id.* at 425.

In *Adams*, the Fourth Circuit held that "*Garcetti* would not apply in the academic context of a public university . . . ." 640 F.3d at 562. There, the plaintiff was a professor who alleged retaliation based upon views he expressed in his scholarship and teaching. *Id.* at 553-56. The Fourth Circuit explained that "[a]pplying *Garcetti* to the academic work of a public university faculty member under the facts of this case could place beyond the reach of First Amendment protection many forms of public speech or service a professor engaged in during his employment." *Id.* at 564. Accordingly, the Fourth Circuit held that *Garcetti* did not apply, and it analyzed the plaintiff's speech under "the *Pickering-Connick* analysis . . . ." *Id.*

In *Demers*, the Ninth Circuit followed *Adams* and held that *Garcetti* does not apply to speech related to scholarship or teaching. 746 F.3d at 406. There, the plaintiff was a professor who alleged retaliation for distributing a "pamphlet and drafts from an in-progress book." *Id.* Citing to *Adams*, the Ninth Circuit "conclude[d] that if applied to teaching and academic writing, *Garcetti* would directly conflict with the important First Amendment values previously articulated by the Supreme Court." *Id.* at 411. Following the approach that the Fourth Circuit adopted, the Ninth Circuit held that "academic employee speech not covered by *Garcetti* is protected under the First Amendment, using the analysis established in *Pickering*." *Id.* at 412.

Most recently, in *Buchanan*, the Fifth Circuit recognized that "[t]he Supreme Court has established that academic freedom is 'a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom.'" 919 F.3d at 852 (quoting *Keyishian*, 385 U.S. at 603). There, the plaintiff was a professor who alleged retaliation after being terminated for using profanity and making crude jokes while teaching. *Id.* at 850-52. Like the Fourth and Ninth Circuits, the Fifth Circuit applied the *Pickering* analysis to determine whether the professor's speech was protected, stating its test as follows:

> Public university professors are public employees. To establish a § 1983 claim for violation of the First Amendment right to free speech, they must show that (1) they were disciplined or fired for speech that is

> a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech.

*Id.* at 853 (internal citations omitted).

As detailed above, the Fourth, Fifth, and Ninth Circuits each concluded that *Garcetti*'s "pursuant to his official duties" exception cannot apply to speech related to scholarship or teaching in higher education based upon First Amendment concerns about academic freedom. By removing the *Garcetti* exception, the Fourth, Fifth, and Ninth Circuits have made it easier for public universities and professors to understand what speech is protected. This simplification undoubtedly helps public universities avoid First Amendment retaliation lawsuits by professors because administrators will know that they cannot punish speech simply because the speech was made pursuant to a professor's job.

This Court should follow the lead of the Fourth, Fifth, and Ninth Circuits and hold that the *Garcetti* exception does not apply to speech related to scholarship or teaching in higher education. In the alternative, this Court could achieve the same result by holding that speech related to scholarship or teaching is categorically citizen speech.

## II. This Court Should Hold That Speech Related to Scholarship or Teaching is Categorically Citizen Speech.

### a. This Court Limits the Scope of the *Garcetti* Exception After *Lane*.

In *Lane*, the Supreme Court considered the scope of the *Garcetti* exception. 573 U.S. at 239. There, the plaintiff was a public employee who alleged retaliation for testifying about information he learned in the course of his employment pursuant to a subpoena in a criminal fraud trial. *Id.* at 231-34. The Eleventh Circuit had held that the plaintiff's speech was not protected under the *Garcetti* exception because he testified about information he learned during his employment. *Id.* at 238-39. The Supreme Court disagreed, condemning the Eleventh Circuit for giving "short shrift to the nature of sworn judicial statements and ignor[ing] the obligation borne by all witnesses testifying under oath." *Id.* at 238.

The Court explained that providing truthful testimony implicated First Amendment concerns that do not fit within the *Garcetti* exception: "Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." *Id.* (citing 18 U. S. C. §1623; *United States v. Mandujano*, 425 U.S. 564, 576 (1976)). In addition to the special First Amendment concerns implicated by truthful testimony, the Court reiterated that "our precedents dating back to *Pickering* have recognized that speech by public employees on subject

matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Id.* at 240.

The Court concluded that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* Based upon this reasoning, the Court held that the plaintiff's testimony was citizen speech that did not lose its protection under the *Garcetti* exception. *Id.* at 241.

In *Boulton*, this Court considered the impact of *Lane* on its public employment jurisprudence. 795 F.3d at 533. There, the plaintiff was a sergeant in a sheriff's office and union leader who alleged retaliation for criticizing his employer during a union arbitration proceeding. *Id.* at 529-30. The district court had held that the plaintiff's speech was unprotected under the *Garcetti* exception "on the basis that [plaintiff] could not have participated in the union or the arbitration if he were not an employee of the Sheriff's Office." *Id.* at 533. This Court disagreed, reviewing its application of *Garcetti* in previous cases and the impact of *Lane* on those decisions. *Id.* at 531-535.

To begin its analysis, this Court explained that "[t]wo questions arise in addressing a public employee's free speech claim. First, we must answer the threshold inquiry—did the employee speak as a 'citizen on a matter of public concern.' . . . If so, we then balance the justifications for a speech restriction against the employee's free speech interest." *Id.* at 531 (quoting and citing *Garcetti*, 547 U.S. at 418). The first inquiry "has two components: whether the employee was speaking as a citizen and whether the topic was a matter of public concern." *Id.* at 531-32. As this Court observed, "[d]etermining whether speech is unprotected due to the *Garcetti* exception or because it is not on a matter of public concern has proven challenging." *Id.* at 533. *Lane* clarified this difficulty "by expressly rejecting an expansive reading of the *Garcetti* exception." *Id.* As this Court stated:

> *Lane* thus highlights the importance of properly categorizing speech when undertaking the two part inquiry into whether speech is protected. The question of whether speech concerns a personnel matter is a question about whether it addresses a matter of public concern, not whether the employee is speaking as a citizen. This is true, our sister circuits have noted, because 'a public employee may speak as a citizen even if his speech involves the subject matter of his employment.'

*Id.* at 534 (quoting *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 990 (3d Cir. 2014)). Applying these principles to the facts, this Court found that the district court erred by "categorizing [plaintiff's] speech as 'speech that owes its existence to a public employee's professional responsibilities,' on the basis that [plaintiff] could not have participated in the union or the arbitration if he were not an employee of

the Sheriff's Office." *Id.* at 533. Instead, this Court held that "speech in connection with union activities is speech 'as a citizen' for the purposes of the First Amendment." *Id.* at 534. By holding that "speech in connection with union activities is speech 'as a citizen' for the purposes of the First Amendment," this Court effectively removed the *Garcetti* analysis from cases involving "union activities." *Gillis v. Miller,* 845 F.3d 677, 684 (6th Cir. 2017) (applying *Pickering* analysis to First Amendment retaliation case involving union speech).

> **b. This Court Should Follow *Boulton* and Hold that Speech Related to Scholarship or Teaching in Higher Education is "Citizen Speech."**

As explained above, the Fourth, Fifth, and Ninth Circuits have held that the *Garcetti* exception (i.e. that speech pursuant to an employee's job duties is not protected) does not apply to speech related to scholarship or teaching in higher education. *Adams*, 640 F.3d at 563; *Demers*, 746 F.3d at 411-12; *Buchanan*, 919 F.3d at 853. Instead, these courts apply the analysis established in *Pickering* to those cases. Although this Court did not hold that the *Garcetti* exception did not apply to union speech, it effectively removed the *Garcetti* exception by holding that union speech is categorically citizen speech. *Boulton*, 795 F.3d at 534.

In *Mayhew*, this Court stated the following three elements of First Amendment retaliation analysis: "First, the employee must speak on 'matters of public concern.' Second, the employee must speak as a private citizen and not as an

employee pursuant to his official duties. Third, the employee must show that his speech interest outweighs 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" 856 F.3d at 462 (internal citations omitted.) In contrast, the Fourth, Fifth, and Ninth Circuit now apply the *Pickering/Connick* analysis to speech related to scholarship or teaching: "To establish a § 1983 claim for violation of the First Amendment right to free speech, [public university professors] must show that (1) they were disciplined or fired for speech that is a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech." *Buchanan*, 919 F.3d at 853 (internal citations omitted).

Comparing the *Buchanan* and *Mayhew* tests, it is clear that the Fourth, Fifth, and Ninth Circuits have removed the second *Mayhew* prong that is based upon *Garcetti* by no longer analyzing whether a professor's speech was made as a citizen or pursuant to their job duties. By holding that union speech was categorically "citizen" speech, this Court also removed the *Garcetti* prong from cases involving union speech. For example, in a recent case involving speech in relation to union activities, this Court went straight to the *Pickering* analysis without mentioning *Garcetti*. *Gillis,* 845 F.3d at 684.

The Supreme Court interpreted the *Garcetti* exception narrowly in *Lane* because, in part, the speech at issue (truthful testimony under oath) implicated

additional First Amendment concerns. *Id.* at 238 (explaining that "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth.'"). Following this narrow interpretation, this Court acknowledged that union speech similarly implicates additional concerns because it is protected under Michigan law. *Boulton*, 795 F.3d at 534 ("Michigan law makes it illegal for a public employer to 'dominate . . . or interfere with the formation or administration of any labor organization.'") (quoting Mich. Comp. Laws § 423.210(1)(b)).

Before *Lane* acknowledged the special First Amendment concerns raised by truthful testimony, the Supreme Court had already recognized the First Amendment concerns of college and university professors. *Garcetti*, 547 U.S. at 425. Indeed, as explained above, this Court has consistently recognized the importance of academic freedom in higher education. *Evans-Marshall*, 624 F.3d at 343-44.

Like the Fourth, Fifth, and Ninth Circuits, this Court should hold that the *Garcetti* exception does not apply to speech related to scholarship or teaching in higher education. *Adams*, 640 F.3d at 563; *Demers*, 746 F.3d at 411-12; *Buchanan*, 919 F.3d at 853. Alternatively, like union speech in *Boulton*, this Court should hold that speech related to scholarship or teaching in higher education is "speech 'as a citizen' for the purposes of the First Amendment." 795 F.3d at 534. Although there

are slight analytical differences to these approaches, both would result in district courts no longer having to undergo the "challenging" task of "[d]etermining whether speech is unprotected due to the *Garcetti* exception or because it is not on a matter of public concern" when it relates to scholarship or teaching in higher education. *Id.* at 533. Instead, courts would be able to analyze the claim under the simpler and more appropriate *Pickering/Connick* analysis. This approach is preferable to three-part test outlined in *Mayhew* because it acknowledges the importance of academic freedom in higher education and simplifies the tasks of administrators faced with deciding whether punishing professors is lawful. 856 F.3d at 462.

## CONCLUSION

"Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned." *Keyishian*, 385 U.S. at 603. In order to continue to safeguard academic freedom, courts must be mindful of their place in the larger context of First Amendment public employment jurisprudence. If this Court concludes that the present case involves academic freedom concerns, it should be cognizant of the need for jurisprudential clarity and precision**.** Because of the importance of academic freedom to our constitutional tradition, this Court should follow the Fourth, Fifth, and Ninth Circuits and hold that the *Garcetti* exception does not apply to speech related to scholarship or teaching in higher education. In the alternative, this Court could achieve the same

result by holding that speech related to scholarship or teaching is categorically citizen speech.

Respectfully Submitted,

Dated:  June 3, 2020

/s/ Deborah A. Ausburn
Deborah A. Ausburn
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 303394
(770) 434-6868

Greg Harold Greubel
William Creeley
Marieke Tuthill Beck-Coon
FOUNDATION FOR INDIVIDUAL
RIGHTS IN EDUCATION (FIRE)
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
(215) 717-3473

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5). This brief contains 3,929 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen (14) point Times New Roman font.

Dated:  June 3, 2020

/s/ Deborah A. Ausburn
Deborah A. Ausburn
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 303394
(770) 434-6868

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 3, 2020, an electronic copy of the *Amicus Curiae* Brief of Foundation for Individual Rights in Education in Support of Neither Affirmance Nor Reversal was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system.

Dated:  June 3, 2020

/s/ Deborah A. Ausburn
Deborah A. Ausburn
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 303394
(770) 434-6868

*Counsel for Amicus Curiae*